**ESTATE OF Edward T. SHARKEY, etc., Plaintiff and Counter-defendant**

v.

**PINE TREE DISTRIBUTORS, INC., et al., Defendants and Counter-plaintiffs**

**No. Civ. AMD 00–2392.**

United States District Court, D. Maryland.

April 30, 2001.

Michael Gerald Rust, Griswold Anderson & Lee, P.A., Easton, MD, for Estate of Edward T. Sharkey, by Marion Mark Personal.

Raymond F. Altman Law Office, Baltimore, MD, Raymond D. Burke, Freishtat & Sandler, Baltimore, MD, Lynn Weinberg, Freishtat and Sandler, Baltimore,

MD, for Pine Tree Distributors, Inc., Janet L. Sharkey, Pine Tree Distributors, Inc. Profit Sharing Plan, Pine Tree Distributors, Inc. Money Purchase Plan.

## MEMORANDUM

DAVIS, District Judge.

This case arises under the Employee Retirement Income Security Act of 1974, *as amended,* 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The parties dispute (and here seek declaratory relief as to) the identity of the rightful beneficiary of the death benefits (an amount in excess of $1 million) of a pension program. Pending before the court are the parties' cross-motions for summary judgment. I have carefully reviewed the parties' submissions and no hearing is necessary. Local Rule 105.6 (D.Md.1999). For the reasons stated below, I shall grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

## I

The facts are simple and straightforward. The decedent is Edward T. Sharkey ("Decedent"), who died on May 26, 1999. The disputants are the personal representative of his estate and the Decedent's former wife and long-time business partner, Janet L. Sharkey ("Sharkey").[1]

The Decedent was the president and sole shareholder of Pine Tree Distributors, Incorporated ("Pine Tree"), which operated a nursery in Maryland. Decedent was a participant in the pension program,

which was established by Pine Tree in 1980.[2] In 1985, during his marriage to Sharkey (who, at all relevant times, was also an employee and officer of Pine Tree), Decedent named her the beneficiary of the death benefits under the pension program. The pension program was "restated" and amended several times over the years to comply with, and to take advantage of enhancements afforded by, statutory changes in federal tax and pension laws, but the essential character of the pension program never changed.

As mentioned above, Decedent and Sharkey remained good friends and business partners through the date of Decedent's death, notwithstanding their divorce in 1992. At the time of Decedent's death, he had expressed an intention to revise his will, and perhaps, although there is no evidence of this, to revise his designation of Sharkey as the beneficiary of the death benefits of the pension program. He died before taking any such action.

After Decedent's death, Sharkey purchased all of the outstanding shares of Pine Tree from the Estate. Sharkey and the Estate "agreed to disagree" over the identity of the proper beneficiary of the death benefits under the pension program. This case is their mechanism for resolving their disagreement.

There is no dispute that the only pension program beneficiary designation executed by the Decedent that has ever been located is the 1985 designation of Sharkey as the beneficiary. If that designation is not given effect for some reason, then

---

1. Nominally, the claim is asserted against Pine Tree as the administrator of the pension program out of which the benefits shall be paid. As Sharkey is the sole shareholder of Pine Tree and the sole beneficiary named in the relevant documents, however, the real party in interest is plainly Sharkey.

2. What I refer to as "the pension program" actually consists of two distinct plans: a money purchase plan and a profit sharing plan. The parties have not suggested, and I do not discern, that the details of the instruments have any bearing on the outcome of this dispute, however, and thus I use the singular form "pension program" to refer to the plans collectively.

because the Decedent was at the time of his death unmarried and childless, the Estate will become the beneficiary. The Estate has exhausted its administrative remedies under the pension program and Pine Tree has finally denied plaintiff's demand that the death benefits be paid to the Estate.

## II

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id.* at 587, 106 S.Ct. 1348. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the nonmoving party upon which a jury can return a verdict for that party." *Shealy v.*

*Winston,* 929 F.2d 1009, 1012 (4th Cir. 1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy,* 929 F.2d at 1012.

## III

The threshold issue in this case is what standard of review to apply. In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established two standards of review to be applied to benefits determinations by plan administrators or fiduciaries. Applying principles of trust law,[3] the Court held that:

---

**3.** The Court reasoned that deference to an ERISA benefit plan administrator's determination would be appropriate only when the benefit plan granted discretion to the administrator, just as a trustee's decisions under a trust instrument are given deferential treatment only when the instrument itself grants the trustee discretion. *Firestone,* 489 U.S. at 111–12, 109 S.Ct. 948.

a denial of benefits under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

489 U.S. at 115, 109 S.Ct. 948. The Fourth Circuit has instructed that the standard of review to be applied when reviewing an administrator's benefits decision is determined by the following process: (1) deciding *de novo* whether the plan language prescribes the benefit or confers discretion on the administrator to determine the benefit; (2) if the plan confers discretion, decide *de novo* whether the administrator acted within the *scope* of that discretion; and (3) if the administrator's decision is within the scope of the discretion conferred by the plan, review the merits for an abuse of discretion. *Booth v. Wal–Mart Stores, Inc.,* 201 F.3d 335 (4th Cir.2000)(setting forth taxonomy of non-exclusive factors which inform court's assessment of plan administrator's exercise of discretion); *Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84 (4th Cir. 1996).

■ In this case, in which it is undisputed that Pine Tree had plenary discretion to determine the identity of the rightful beneficiary of the death benefits, I apply a searching abuse of discretion standard. *Id.* Even were I to apply a *de novo* standard, however, the outcome would be the same.

Plaintiff makes four arguments as to why the Decedent's 1985 designation of Sharkey as beneficiary, the only designation known to exist, should not be given effect. None of these arguments is sufficient to override the designation of Sharkey which appears in the record and Pine Tree did not abuse its discretion is so concluding.

■ First, plaintiff contends that Sharkey waived her rights to the death benefits under the pension program when, attendant to the dissolution of her marriage to Decedent, she executed a Voluntary Separation Agreement, which was incorporated into, but not merged in the judgment of divorce. The Separation Agreement contained, *inter alia,* a mutual release by the Decedent and Sharkey of "any and all rights or interests which [they now have] or may hereafter acquire in the real, personal or other property of the other." *See* Defs.' Ex. 14. This contention founders on the rule of *Estate of Altobelli v. IBM,* 77 F.3d 78, 81 (4th Cir.1996) (holding that ex-wife had no interest in ex-husband's ERISA plan because "each party clearly intended [by the terms of a property settlement] to relinquish all interests in the pension plans of the other"). The Separation Agreement in this case neither contains the word "pension" nor otherwise contains a *clearly expressed intention* to waive any rights under ERISA. Accordingly, this contention is rejected; Pine Tree has correctly interpreted *Altobelli.*

Second, plaintiff contends that upon the several amendments and restatements of the pension program between 1985 and the date of Decedent's death in 1992, "the plans were changed" and that the Decedent's failure to file new beneficiary designations on new forms, as permitted under the restated plans, vitiates the 1985 beneficiary designations. I regard this contention as specious and I reject it out of hand, as did Pine Tree.

Third, plaintiff contends that Sharkey is rendered incompetent as a witness by operation of the Maryland Dead Man's Statute, Md.Code Ann., Cts. & Jud. Proc. § 9–116. Thus, according to plaintiff, no witness is available to authenticate the beneficiary designations naming Sharkey as the beneficiary. As did Pine Tree, however, I

reject this contention. Fundamentally, I reject the premise that only Sharkey can authenticate the forms. Moreover, even assuming the Maryland Dead Man's statute otherwise erects a bar to Sharkey's authenticating testimony, it is inapplicable in this case, which is here based on federal question jurisdiction. *Lovejoy Electronics, Inc. v. O'Berto,* 873 F.2d 1001, 1005 (7th Cir.1989).

Finally, plaintiff contends that I should simply disbelieve Sharkey's attestation that the 1985 designation is the most recent or the only designation ever executed by the Decedent, and/or that I should reject Pine Tree's determination to accept her affirmation of this fact since she is, after all, the alter ego of Pine Tree. I am not persuaded, however, that there is any need to conduct a non-jury trial of this matter.

## IV

For the reasons stated above, I am persuaded that Pine Tree acted reasonably and appropriately in giving effect to the 1985 beneficiary designations naming Sharkey as the beneficiary under the pension program. Accordingly, I shall grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment. An order follows.

### ORDER

For the reasons stated in the foregoing Memorandum, it is this 30th day of April, 2001, by the United States District Court for the District of Maryland, ORDERED

(1) That defendant's motion for summary judgment is GRANTED AND A DECLARATORY JUDGMENT IN THE FORM REQUESTED BY DEFENDANT IS ENTERED HEREWITH; and it is further ORDERED

(2) That plaintiff's motion for summary judgment is DENIED; and it is further ORDERED

(3) That the Clerk of the Court shall CLOSE this case and TRANSMIT a copy of this Order, the foregoing Memorandum and the accompanying Judgment Order to counsel of record.